UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:22-cr-326 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| TROY SUMMERS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Pending before the Court is the motion of defendant Troy Summers ("Summers") to withdraw his guilty plea. (Doc. No. 49 (Motion to Withdraw Plea).) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 53 (Opposition).) The Court held a hearing on the motion on October 17, 2023 and, at the conclusion of the hearing, the Court took the matter under advisement. For the reasons set forth herein, Summers' motion is DENIED.

**I.   BACKGROUND**

On May 23, 20233, Summers was named in a criminal complaint charging conspiracy to possess controlled substances with the intent to distribute and possession of controlled substances with the intent to distribute. (Doc. No. 1 (Complaint); Doc. No. 1-1 (Affidavit in Support).) At his initial appearance the following day, Summers was appointed a CJA attorney, Alek H. El-Kamhawy, to represent him. (*See* Order [non-document], 5/24/2022.)

On June 23, 2022, an indictment issued charging Summers with two counts of possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1). (Doc. No. 11 (Indictment).) Specifically, the charges involved violations of two different subsections:

§841(b)(1)(A) and § 841(b)(1)(B). (*Id.*) These charges carried mandatory minimum sentences of ten and five years, respectively. At his arraignment, Summers entered pleas of "not guilty" to the charges.

Mr. El-Kamhawy later moved to withdraw from the case. (Doc. No. 13 (Motion to Withdraw as Counsel).) The Court granted the motion to withdraw and appointed Attorney Timothy C. Ivey of the Federal Public Defender's Office to represent Summers. (Order [non-document], 8/2/2022; *see* (Doc. No. 15 (Ivey Notice of Appearance).)[1] The Court granted Summers' motion to continue the dates and deadlines in the case to afford new counsel sufficient time to prepare for trial. (Minutes of Proceedings [non-document], 8/9/2022; Doc. No. 17 (Ends of Justice Order).)

With input from the parties, the final pretrial conference was set for June 8, 2023, and the jury trial was set for July 10, 2023. At the final pretrial conference, Summers, through counsel, indicated that he would like to file a motion to suppress. Despite the fact that the time to file such pretrial motions had long passed, and without objection by the government, Summers was permitted to file the untimely motion. Additionally, by agreement of the parties, the date of the jury trial was delayed one week, to July 17, 2023, to give the parties extra time because the untimely motion practice would interrupt their trial preparations.

On June 9, 2023, Summers filed his motion to suppress, in which he challenged the April 20, 2022, protective sweep and subsequent search of the residence he shared with his girlfriend. (Doc. No. 32 (Motion to Suppress).) The government opposed the motion. (Doc. No. 33

---

[1] Attorney Alvaro L. DeCola, also of the Federal Public Defender's Office, subsequently entered an appearance on behalf of Summers. (*See* Doc. No. 47 (DeCola Notice of Appearance).)

(Response).) On June 29, 2023, the Court held an evidentiary hearing on the motion. (Minutes of Proceedings [non-document], 6/29/2023.) At the conclusion of the hearing, the Court took the matter under advisement, but, as a courtesy to counsel who had been in the process of preparing for trial (and, therefore, needed to know whether to continue preparations), the Court issued a preliminary ruling advising that it intended to deny the motion.

The Court found that there was clear consent for the protective sweep and subsequent search of the residence and also for the search of the car in which the defendant was found unresponsive. More specifically, the Court found that Aundrea Hallgren (who resided at the residence and accompanied the officers during the protective sweep) gave police consent to perform the protective sweep, the police did not exceed the scope of the protective sweep, and that the protective sweep also was appropriate under the caretaker exception. (At the hearing, the defendant conceded the appropriateness of the protective sweep.)

The Court also found that the search of the car (where the defendant was found unresponsive) was appropriate for a number of reasons, including that, Hallgren, the owner of the car, gave both oral and written consent for the search. Additionally, the search was appropriate because the officers saw drugs in plain view.

As to the search of the residence, the Court found that Hallgren gave consent, both orally and in writing, that the consent was valid and not in any way coerced, that Hallgren was permitted to remain on the premises, and that she was informed that she had a right to stop the search.

The Court told the parties that its later ruling would be more detailed and contain all of its reasons for the denial of the motion to suppress, and that it would either announce the ruling at a subsequent hearing or issue a written ruling. A hearing was set for July 14, 2023, so that the Court

could announce its more detailed ruling. Before the hearing commenced, Summers informed his attorneys that he would like to discuss a proposed plea agreement. The Court gave Summers time to meet privately with his attorneys to discuss a possible plea. After the meeting, defense counsel advised the Court that Summers had elected to enter into a Rule 11(c)(1)(C) plea agreement with the government. (*See* Doc. No. 48 (Plea Agreement).) Defense counsel represented that he had a chance to meet with Summers the evening before and twice on the day of the hearing, and then a last time with co-counsel, and that his client wished to accept the Rule 11(c)(1)(C) plea agreement, which had been presented to the Court. (Doc. No. 51, at 4.)

Based upon this development, the Court converted the hearing to a change of plea hearing. At the beginning of the hearing, the Court observed that in the Rule 11(c)(1)(C) agreement, Summers would be agreeing to plead to lesser-included charges of the indictment, as modified by the plea agreement. (Doc. No. 51 (Transcript of Change of Plea Hearing) at 7;[2] *see* Doc. No. 48 (Plea Agreement) ¶ 2.) So, instead of pleading to a violation of 18 U.S.C. §§ 841(a)(1) and *(b)(1)(A)* for Count 1 and a violation of 18 U.S.C. §§ 841(a)(1) and *(b)(1)(B)* for Count 2, each of which would have carried mandatory minimum sentences of ten and five years, respectively, Summers would be pleading guilty to violations of 18 U.S.C. §§ 841(a)(1) and *(b)(1)(C)* for both counts, which would not carry any mandatory minimum sentence. (*Id.* at 5–7.) Additionally, by accepting the agreement, Summers would agree to a stipulated custody sentence of eighty-five months. (*Id.* at 5–6.) Further, prior to engaging the defendant in a Rule 11 plea colloquy, the Court emphasized that Summers would not be able to appeal anything regarding the motion to suppress should he enter into the plea agreement. (*Id.* at 8–10.) Both Summers and his attorney indicated

---

[2] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

that they understood Summers would be waiving the right to appeal anything regarding the suppression motion by accepting the agreement. (*Id.* at 10.)

The Court then conducted a plea colloquy in accordance with Fed. R. Crim. P. 11, for which Summers was placed under oath. (*See id.* at 11.) At the beginning of the colloquy, the Court determined that Summers was not under the influence of drugs, alcohol, and/or any chemical substance that might affect his ability to understand the proceedings. (*Id.* at 14.) The Court also confirmed that Summers did not suffer from any mental conditions that would interfere with his ability to understand what was being said, and that he had received sufficient time to review and discuss with counsel the indictment and the charges contained therein, that he had sufficient time to review the plea agreement and discuss it with his attorneys, and that he did not need any additional time to review the plea agreement or discuss it with his attorneys. (*Id.* at 14–16)

The Court then identified the constitutional rights Summers would be waiving by foregoing a trial in this matter and entering guilty pleas, and Summers advised that he understood and agreed to give up each right. (*Id.* at 16–19.) The Court also reviewed with Summers the lesser-included charges to which he would be pleading, the statutory penalties associated with those charges, and the elements of each offense. (*Id.* at 20–35.) As to each, Summers stated that he understood. (*Id.*)

The only point at which the defendant asked a question was upon review of a highly technical provision of the agreement preserving the applicability of the "safety valve" provisions under 18 U.S.C. § 3555(f) and U.S.S.G. § 5C1.2. (*Id.* at 24–27.) The plea agreement allowed Summers to argue for, and the government to argue against, application of the safety valve provisions in the event the Court rejected the binding agreement and Summers, nonetheless, still elected to proceed with sentencing. (*Id.*) Summers astutely observed that, because his agreement

provided for a specific custody sentence of 85 months, consideration of application of the safety valve provision would be unnecessary if the Court accepted the binding agreement. (*Id.*) Summers' counsel agreed that this provision would only become applicable should the Court reject the proposed agreement. (*Id.*) Summers then confirmed that he understood the provision. (*Id.*)

The Court then continued to walk through the agreement with Summers by identifying the portion of the agreement laying out the factual basis for Summers' charges, paragraph nineteen. The Court asked Summers if had reviewed the charges with his attorney. (*Id.* at 32.) He agreed that he had. (*Id.*) The Court then read in the elements of the crimes: "first, that you possessed a controlled substance; second, that you knew the substance was a controlled substance; and third, that you intended to distribute the controlled substance." (*Id.* at 32–33.) Summers indicated that he understood that the government would be required to prove each of these elements beyond a reasonable doubt if he proceeded to trial and that these were the elements to which he would be pleading guilty if he entered a plea of guilty to the charges. (*Id.* at 33–35.)

The Court again confirmed that Summers had read the charges the factual basis for the guilty plea and asked if he needed additional time to discuss the factual basis with his attorneys. (*Id.* at 34.) Summers indicated that he had read the factual basis, discussed it with his attorneys, and did not need additional time. (*Id.*) The Court asked Summers if he agreed that all the information contained in paragraph nineteen was correct. (*Id.*) He agreed that it was. (*Id.*) The Court asked Summers if he engaged in the conduct described in paragraph nineteen. (*Id.* at 35.) He answered "Yes." (*Id.*) The Court asked if he engaged in the conduct knowingly, voluntarily, and intentionally. (*Id.*) Summers again said "Yes." (*Id.*) Summers was then asked if there was any statement of fact in paragraph nineteen with which he disagreed. (*Id.*) He said that there was not.

(*Id.*) Finally, the Court asked Summers if he agreed that the government would be able to prove the facts set forth in the factual basis beyond a reasonable doubt, and if he was pleading guilty because he was, in fact, guilty of committing the crimes set forth in the agreement. (*Id.*) He answered in the affirmative. (*Id.*)

The Court then once again asked Summers if he needed any additional time to discuss with his lawyers. (*Id.* at 36–37.) He said he did not. (*Id.*) Summers confirmed that he was fully satisfied with his legal representation, and that he had not been coerced or threatened to enter into the plea agreement. (*Id.* at 37–38.) The Court asked if Summers had any remaining questions about the agreement. (*Id.* at 39.) He said that he did not. (*Id.*) At the conclusion of the hearing, the Court accepted Summers' guilty plea as a knowing, intelligent, and voluntary plea, and also accepted the parties' Rule 11(c)(1)(C) agreement.[3] (*Id.* at 40–41.) The Court set sentencing for October 26, 2023.

On September 11, 2023, Summers filed a motion to withdraw his guilty plea. (Doc. No. 49 (Motion to Withdraw Plea).) In this motion, Summers argued that he had experienced a "change of heart" and expressed a renewed desire to pursue the motion to suppress the Court had previously denied. (*Id.* at 3–4.) Summers also suggested that the time between the plea and his decision to withdraw—"less than two months"—weighed in his favor, (*id.* at 3), as did his alleged "minimal criminal history" (*id.* at 4). This minimal criminal history, Summers claimed, demonstrated that he was not "sophisticated in the law" and weighed in favor of allowing the motion. (*Id.*) Finally, Summers argued that prejudice to the government would be minimal. (*Id.*)

---

[3] In accepting the proposed Rule 11(c)(1)(C) agreement, the Court observed that it had more information regarding the charges than it usually had when presented with such an agreement, by virtue of the fact that the case had reached the eve of trial and the Court had conducted an extensive hearing on the suppression motion. (Doc. No. 51, at 40–41.)

The government filed a response in opposition to the motion to withdraw on September 25, 2023. (Doc. No. 53 (Opposition).) In its opposition, the government argued that Summers had not asserted his innocence, that the circumstances of the plea and plea colloquy indicated that Summers' plea was knowing, intelligent, and voluntary, and that Summers' criminal history indicated he properly understood the consequences and gravity of pleading guilty. (*Id.* at 6–7.) The government reserved any arguments about prejudice. (*Id.* at 7–8.)

On October 17, 2023, the Court conducted a hearing on the motion to withdraw. At the hearing, counsel for Summers argued that the period of time between his plea and desire to withdraw was actually shorter than the docket would suggest. While the period between Summers' July 14, 2023, plea and his September 11, 2023, motion to withdraw was fifty-nine days, defense counsel represented that Summers had actually expressed his desire to withdraw shortly after his presentence interview and before agreeing to sign a statement accepting responsibility. While a precise date was not provided for Summers' "change of heart," his presentence interview was held on August 23, 2023. Counsel conceded that he had not heard from Summers between the plea and the presentence interview, and that nothing had prevented Summers from reaching out to him during this time. Notwithstanding his client's statements under oath and in open court that he understood the plea agreement and had sufficient time to consider the plea agreement and discuss it with his attorneys, counsel for Summers argued that Summers "felt a bit pressured" by the circumstances of the plea, and that the pressure had caused him to agree to things he did not actually believe or understand during the plea colloquy. Nevertheless, defense counsel conceded that the plea colloquy was without defect and that there is no point in the transcript from the change

of plea hearing that would reflect any confusion on Summers' part. As was his right, Summers declined to testify at the hearing.

The government disagreed that Summers was pressured, pointing to the fact that Summers was allotted extra time both to file his suppression motion and to discuss the plea agreement before the hearing commenced on July 14, 2023. The government further argued that Summers' criminal history, including several OVI's, indicated that he understood the importance of a guilty plea.

## II. DISCUSSION

### A. Governing Law

"It is well settled that the withdrawal of a guilty plea prior to sentencing is not an absolute right but is a matter within the broad discretion of the district Court." *United States v. Spencer*, 836 F.2d 236, 238 (6th Cir. 1987) (quotation marks and citations omitted). "The withdrawal of a guilty plea is inherently in derogation of the public interest in finality and the orderly administration of justice." *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) (quotation marks and citations omitted). Nevertheless, "[u]nder Rule 11(d), a defendant may withdraw a guilty plea if 'the defendant can show a fair and just reason for requesting the withdrawal.'" *United States v. Catchings*, 708 F.3d 710, 717 (6th Cir. 2013) (quoting Fed. R. Crim. P. 11(d)(2)(B)). "It is the defendant's burden to demonstrate that proper grounds exist for the granting of" a motion to withdraw his guilty plea. *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007).

In the Sixth Circuit, a multi-factor balancing test is employed to guide district courts in deciding whether to grant a motion to withdraw a guilty plea. The factors are:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it;
> (2) the presence (or absence) of a valid reason for the failure to move for withdrawal

earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded on other grounds as recognized in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000). No one factor controls; the list is general and nonexclusive. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996). The relevance of each factor will vary according to the "circumstances surrounding the original entrance of the plea as well as the motion to withdraw." *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987). Plea withdrawals should generally not be allowed where a defendant has made "a tactical decision to enter a plea, wait[ed] several weeks, and then . . . believes he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (quoting *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984)). Rather, Rule 11(d)(2)(B) is designed "to allow a hastily entered plea made with unsure heart and confused mind to be undone . . . ." *Id*. at 1004.

### B. *Bashara* Factors

#### 1. Amount of Elapsed Time

The first factor the Court considers is the amount of time that elapsed between the guilty plea and the motion to withdraw the plea. *Bashara*, 27 F.3d at 1181. "'The shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time.'" *Ellis*, 470 F.3d at 281 (quoting *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996)). In the present case, the gap between Summers' guilty plea and the motion to withdraw is fifty-nine

days. Such a delay is well past the thirty-day "boundary line between what is acceptable and what is not." *United States v. Jannuzzi*, No. 07-4521, 2009 WL 579331, at *3 (6th Cir. Mar. 9, 2009). And the Sixth Circuit has affirmed denials of a motion to withdraw guilty a plea well short of the fifty-nine days in this case. *See, e.g., United States v. Simmons*, 794 F. App'x 461, 467 (6th Cir. 2019) (46 days); *United States v. Powell*, 236 F. App'x 194, 197 (6th Cir. 2007) (6 days); *Spencer*, 836 F.2d at 239 (35 days); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (55 days).

At the hearing on the motion to withdraw his plea, counsel for Summers informed the Court that Summers had expressed a desire to withdraw his plea sometime after his presentence interview, though he conceded that nothing prevented Summers from contacting counsel to file the motion to withdraw sooner. Summers' attempt to argue that his delay was shorter than 59 days is without merit. First, "the *Bashara* court . . . made clear that there is a difference between merely regretting a plea and formally moving to withdraw it." *United States v. Owens*, 215 F. App'x 498, 501 (6th Cir. 2007) (citing *Bashara*, 27 F.3d at 1181). A district court "cannot act on a defendant's intention alone." *United States v. Gasaway*, 437 F. App'x 428, 433 (6th Cir. 2011). Second, even if the Court were to consider Summers' argument that a shorter time lapse applies, using the most generous possible window under the facts presented, Summers still would have waited forty days before expressing a desire to withdraw his plea. Forty days is still well past the "boundary line" of thirty days set by the Sixth Circuit in *Januzzi*. 2009 WL 579331, at *3. The Sixth Circuit has affirmed courts denying a motion to withdraw a guilty plea within this range as well. *United States v. Jackson*, 238 F. App'x 45, 48 (6th Cir. 2007) (40 days); *Powell*, 236 F. App'x at 197 (6 days); *Spencer*, 836 F.2d at 239 (35 days).

The Court finds that the substantial delay in bringing the present motion weighs heavily against withdrawal.

2. *Valid Reason for Failing to Move to Withdraw Earlier*

For many of the same reasons, the second factor also strongly counsels against permitting a withdrawal of the guilty plea. "In determining whether to grant a motion to withdraw a guilty plea, courts consider whether the defendant can establish 'a valid reason for the failure to move for withdrawal earlier in the proceedings.'" *United States v. Coffman*, No. 21-3740, 2022 WL 17078876, at *5 (6th Cir. Nov. 18, 2022) (quoting *Bashara*, 27 F.3d at 1181). If the defendant is able to present a valid reason for delay, that reason will weigh in his favor. But a "tactical decision" to plead and then withdraw is not permitted, and counsels against granting the motion. *Alexander*, 948 F.2d at 1004 (quoting *Carr*, 740 F.2d at 345).

In his motion, Summers argues that the "relatively brief period between plea and request to withdraw also satisfies the second factor [of *Bashara*]." (Doc. No. 49, at 3.) But, as discussed above, the period between Summers' plea and his motion to withdraw is not particularly brief. In fact, it is well past the thirty day "boundary line" separating the sometimes-acceptable motions to withdraw from those that are generally unacceptable. *Januzzi*. 2009 WL 579331, at *3.

At the hearing, counsel for Summers suggested several possible reasons for the delay in bringing the motion to withdraw. First, he indicated that Summers had experienced a "change of heart." But a "last-minute change of heart" is not sufficient to justify withdrawing a guilty plea. *Baez*, 87 F.3d at 809. Second, counsel for Summers indicated that Summers had a renewed desire to pursue his earlier motion to suppress. Of course, the Court had already denied the suppression motion, after permitting Summers to fully pursue it through briefing and an extensive evidentiary

12

hearing. But, in any event, such "tactical decisions" are not permittable grounds to withdraw a plea. Finally, counsel for Summers suggested that the motion may have been delayed because he did not see his client in the time between his guilty plea and the presentence interview on August 23, 2023. But counsel also admits that Summers never reached out, either by phone, email, or regular mail, to express a desire to withdraw his plea.

As such, the second factor also weighs against allowing a withdrawal of the guilty plea.

### 3. Assertion of Innocence

"Whether the movant has asserted his legal innocence is an important factor to be weighed." *Spencer*, 836 F.2d at 238. At the hearing, counsel for Summers argued that Summers felt coerced by the process leading up to his plea, and that this pressure caused him to say "essentially what he didn't mean" and profess to understand "things that he really didn't understand." This is despite the fact that it was Summers who asked for time to explore a plea agreement prior to the hearing on July 14, 2023. Counsel for Summers indicated, that before Summers asked to explore resolution, he was prepared to advise the court that Summers was ready to go to trial.

Summers' silent feelings fall short of the "vigorous and repeated protestations of innocence" that would support allowing withdrawal of his guilty plea.[4] *Alexander*, 948 F.2d at 1004. This is especially so where, as Summers did here, the defendant has admitted under oath

---

[4] Summers also claims that he wishes to withdraw his plea to further contest the search of his house. His desire to "further contest" the previously denied suppression motion, which the Court, after a full hearing, indicated it would deny, cannot, in any way, be construed as an assertion of innocence. And these types of "technical challenges to [the] indictment" are not permissible grounds to withdraw a guilty plea. *See United States v. Watkins*, 815 F. App'x 22, 25 (6th Cir. 2020). Moreover, the Sixth Circuit "[has] not found that a defendant's post-plea expression of the desire to pursue a motion to suppress" is sufficient grounds for a motion to withdraw a guilty plea. *United States v. Hughes*, 392 F. App'x 382, 386 (6th Cir. 2010).

that there was a sufficient factual basis for both convictions, and that he was pleading guilty because he was guilty of committing the offenses as described by the government. *See Owens*, 215 F. App'x at 502 ("Although [defendant] asserted his innocence before and after his guilty plea," the third *Bashara* factor weighed against withdrawal where defendant signed a plea agreement and "testified at his plea hearing that he was entering a guilty plea because he was in fact guilty[.]").

Because he admitted on the record under oath that there was a sufficient factual basis for both crimes to which he pled guilty and that he was guilty of the charged offenses, this factor weighs against Summers. *See United States v. Dixon*, 479 F.3d 431, 437 (6th Cir. 2007) (quoting *Baez*, 87 F.3d at 809 (holding that "the absence of a defendant's vigorous and repeated protestations of innocence support the denial of a motion to withdraw a guilty plea")).

### 4. Circumstances Underlying the Guilty Plea

"When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." *Ellis*, 470 F.3d at 280 (quotation marks and citation omitted). A defendant may be able to withdraw his guilty plea where it is obtained "unfairly" or "through ignorance, fear or inadvertence." *United States v. Coffman*, No. 21-3740, 2022 WL 17078876, at *6 (6th Cir. Nov. 18, 2022) (quoting *Kercheval v. United States*, 274 U.S. 220, 224, 47 S. Ct. 582, 71 L. Ed. 1009 (1927)). Circumstances in which there is confusion, new information, or procedural irregularity may be sufficient to weigh in favor of Summers. *See United States v. Collins*, 311 F. App'x 741, 744–45 (6th Cir. 2008).

In this case, there is nothing to indicate that the plea was not knowing and voluntary. Summers states that he "continues to question the charges presented," but he also admits that "he

was not coerced into entering a plea of guilty." (Doc. No. 49, at 4.) This comports with his representations during the plea colloquy, where Summers indicated that he understood the terms of the agreement, the rights he was waiving, the crimes with which he was charged, and the lesser-included charges to which he was pleading. (*See, e.g.*, Doc. No. 51, at 16–19.) Summers further admitted to the specific criminal acts described in the plea agreement. (*Id.* at 32–35.) At no time during the plea hearing did he indicate doubt or uncertainty, and defense counsel also conceded that the plea colloquy was without defect and that there is no point in the transcript that demonstrates Summers' confusion. (*See generally*, *id.*) This factor weighs heavily against Summers.

> 5. *Summers' Nature and Background*

A defendant's intelligence, sophistication, and understanding of the plea are relevant to a court's analysis of the fifth *Bashara* factor. *See Ellis*, 470 F.3d at 285. This factor is particularly important where the defendant's background indicates that he may have "misunderstood the plea agreement or the consequences of signing it." *United States v. Quinlan*, 473 F.3d 273, 278 (6th Cir. 2007). Courts will therefore evaluate a defendant's level of education, sophistication, and the state of their mental and physical health to determine if the defendant could properly appreciate the gravity of his guilty plea. *See, e.g.*, *United States v. Goddard*, 638 F.3d 490, 495 (6th Cir. 2011) (education and health); *Quinlan*, 473 F.3d at 278 (sophistication and business background); *United States v. Lewis*, 800 F. App'x 353, 359 (6th Cir. 2020) (mental health).

Summers did not graduate from high school (though he has a tenth-grade education) and does not have a GED. (Doc. No. 51 at 13.) This fact weighs in his favor. But Summers did confirm that he could read and write, and he did not indicate that he had any health conditions that would

impact his ability to understand the proceedings. (*Id.* at 14.) At numerous points during the plea colloquy, Summers indicated that he understood the rights he would be waiving by entering a plea agreement. (*See, e.g.*, *id.* at 16, 18, 21.) Moreover, Summers demonstrated a nuanced understanding of his plea agreement when he inquired regarding the applicability of the safety valve provision in 18 U.S.C. § 3555(f). (*Id.* at 24–27.) The agreement contained a provision allowing for arguments about the safety-valve provision in the event that the Court rejected the agreement. Summers' inquiry demonstrated he understood, correctly, that there would be no need to discuss the applicability of the safety valve provision should the Court accept the binding plea agreement, and that the safety valve provision would not come into play unless the Court rejected the plea agreement and Summers, nonetheless, elected to go forward with a sentencing hearing.

Notwithstanding his relatively limited tenth-grade education, it was evident to the Court during the course of its colloquy with Summers that he was both sophisticated and mentally aware enough to understand the nature and gravity of his plea. *See Lewis*, 800 F. App'x at 359 (crediting the district court's determination that the defendant "displayed an understanding at the plea hearing of the costs and benefits of his options[]"); *United States v. Brown*, 752 F. App'x 309, 315 (6th Cir. 2018) (finding that the district court was "justified in concluding that [the defendant's] limited education did not render his plea less than knowing and voluntary" given its care in conducting the colloquy and allowing the defendant time to discuss with his attorneys). The Court finds that this factor weighs against granting the motion.

### 6. Prior Experience with the Criminal Justice System

The fact that a defendant has had prior contacts with the criminal justice system weighs against allowing him to withdraw his plea. *See Owens*, 215 F. App'x at 502. This is especially so

where the defendant exhibits familiarity with the plea process. *United States v. Wynn*, 663 F.3d 847, 850 (6th Cir. 2011) (finding that a defendant was "familiar with the criminal justice system and plea process because he had previously pleaded guilty to charges"). Summers has previously entered pleas of guilty to two OVI's and a state charge of possession of a controlled substance. (Doc. No. 55 (Final Presentence Report) at 7–9.)

Even though these prior offenses involved misdemeanor state court crimes, the Court finds that Summers was still sufficiently familiar with the criminal justice system to appreciate the significance and ramifications of the plea process. *See Brown*, 752 F. App'x at 315 (rejecting the defendant's argument that, because his criminal history is exclusively in the state system, this factor weighs in his favor); *see also United States v. Peppers*, 396 F. App'x 186, 191 (6th Cir. 2010) (finding the defendant's experience with the criminal justice system weighed against allowing withdrawal even though most prior offenses were "driving related offenses"); *United States v. Knight*, 30 F. App'x 488, 491 (6th Cir. 2002) (finding the defendant had "extensive prior experience" with guilty pleas despite having never served a term of incarceration for any offense).

As was the case with the fifth factor, the Court finds that the sixth factor weighs slightly in favor of denying the motion.

### 7. Prejudice to the Government

The government does not assert any prejudice, reserving its right to advance an argument in the event the Court were to find that Summers has established a fair and just reason for withdrawing his plea. (Doc. No. 53, at 7–8.) It is well settled that the government need not establish prejudice that would result from a plea withdrawal "unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal[.]" *Spencer*, 836 F.2d at 240; *see*

*Catchings*, 708 F.3d at 717–18 (finding that the seventh factor need not be considered if the defendant "has not put forth a fair and just reason for allowing withdrawal of his plea"). Because the first six factors weigh against Summers, he has not established a "fair and just reason" for requesting to withdraw his guilty plea, and the government need not demonstrate prejudice.

### III. CONCLUSION

On balance, the *Bashara* factors weigh heavily against Summers on his motion. The motion to withdraw his guilty pleas (Doc. No. 49) is, for the reasons set forth above, DENIED.

**IT IS SO ORDERED**.

Dated: October 27, 2023

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**